IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

VICTORIA T.,

        Plaintiff,

        v.                                             Civil Action No.
                                                      5:20-CV-1238 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____

<u>APPEARANCES</u>:                          <u>OF COUNSEL</u>:

<u>FOR PLAINTIFF</u>

MEGGESTO, CROSSETT &            KIMBERLY A. SLIMBAUGH, ESQ.
VALERINO, LLP
313 East Willow Street, Suite 201
Syracuse, NY 13203

<u>FOR DEFENDANT</u>

SOCIAL SECURITY ADMIN.          MOLLY CARTER, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>ORDER</u>

      Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g), are cross-motions for judgment on the pleadings.[1]  Oral argument was heard in connection with those motions on January 19, 2022, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)     Defendant's motion for judgment on the pleadings is GRANTED.

---

[1]     This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2)      The Commissioner's determination that the plaintiff was not

disabled at the relevant times, and thus is not entitled to benefits under the

Social Security Act, is AFFIRMED.

3)      The clerk is respectfully directed to enter judgment, based

upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:      January 20, 2022
            Syracuse, NY

UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
VICTORIA T.,

                            Plaintiff,

vs.                              5:20-CV-1238

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
-------------------------------------------x

        Transcript of a **Decision** held during a

Telephone Conference on January 19, 2022, the

HONORABLE DAVID E. PEEBLES, United States Magistrate

Judge, Presiding.

              A P P E A R A N C E S

                (By Telephone)

For Plaintiff:        MEGGESTO, CROSSETT & VALERINO
                      Attorneys at Law
                      313 E. Willow Street, Suite 201
                      Syracuse, New York  13203
                        BY:  KIMBERLY A. SLIMBAUGH, ESQ.

For Defendant:        SOCIAL SECURITY ADMINISTRATION
                      Office of General Counsel
                      J.F.K. Federal Building
                      Room 625
                      Boston, Massachusetts  02203
                        BY:  MOLLY CARTER, ESQ.


            *Jodi L. Hibbard, RPR, CSR, CRR*
          *Official United States Court Reporter*
                *100 South Clinton Street*
            *Syracuse, New York  13261-7367*
                  *(315) 234-8547*

1        (The Court and all counsel present by

2        telephone.)

3        THE COURT:  All right.  Let me begin by thanking

4    both counsel for excellent and spirited presentations, I have

5    enjoyed working with you in this matter.

6        Plaintiff has commenced this proceeding pursuant to

7    42 United States Code Section 405(g) to challenge a

8    determination by the Commissioner of Social Security finding

9    that she was not disabled at the relevant times and therefore

10   is ineligible to receive disability benefits.

11       The background is as follows:  Plaintiff was born

12   in November of 1965.  She is currently 56 years of age.  She

13   was 46 years old at the alleged onset of disability on

14   February 16, 2012.  Plaintiff stands between five-foot-five

15   and five-foot-six inches in height and has weighed at various

16   times between 186 and 190 pounds, making her clinically

17   obese.  She graduated from high school and was in regular

18   classes while attending school.  Plaintiff lives in

19   Chittenango, New York with her husband.  She is right-handed

20   and drives and possesses a driver's license.  Work wise,

21   plaintiff stopped work on July 10, 2012, although as I will

22   note in a moment, she has had some work activity since that

23   time.  When she was employed full time, she worked as a baker

24   and as a maintenance and floor cleaner person at Walmart.

25   She has also worked in the past as a part-time horse handler

1    and as a part-time cashier and stocker at a Dollar General.

2    The position there ended due to a Workers' Compensation

3    injury that she suffered on February 16, 2012.  In 2018,

4    plaintiff took a part-time teaching assistant position with

5    the Chittenango Central School District where she works with

6    disabled students.

7            Physically, plaintiff suffers from a right shoulder

8    issue which has resulted in approximately five surgeries.

9    She is scheduled, or was at the time of the hearing, for a

10   release procedure and if that failed, it was indicated that

11   she may need a complete shoulder replacement.  Plaintiff

12   testified that she undergoes trigger point injections and

13   nerve blocks three to four times per year for her shoulder

14   issue.  She also suffers from osteoarthritis in the hands,

15   shoulder, and jaw, a hearing loss, and a condition known as

16   urinary cystitis which is generally described, as I

17   understand it, as a chronic condition causing bladder

18   pressure, bladder pain, and sometimes pelvic pain which can

19   range from mild discomfort to severe.  The plaintiff has

20   undergone treatment for that which includes a cystoscopy and

21   suburethral sling insertion in December of 2015, and a

22   cystoscopy and bladder hydrodistention on February 26, 2019.

23   She also experiences hypertension, GERD and other

24   gastrointestinal issues, bilateral hearing issues for which

25   she uses hearing aids, and asthma, which appears to be fairly

1    controlled.

2              She has obtained treatment from TriValley Family

3    Practice with Dr. Harry Capone who appears to be her primary,

4    from New York Spine and Wellness she has obtained pain

5    treatment through Family Nurse Practitioner Mara Morabito,

6    her urologist and urosurgeon is Dr. Bashar Omarbasha.  At

7    New York Spine and Wellness she has also seen Dr. Eric

8    Tallarico.  She has obtained treatment at Upstate Orthopedics

9    through Dr. Kevin Setter and others, and she treats at

10   Digestive Disease Medicine of Central New York through

11   Dr. Robert Pavelock.

12             In terms of activities of daily living, plaintiff

13   is able to shower and dress with help from her husband, cook,

14   do laundry, do some housework, shop, watches television, uses

15   the computer, and writes.  At 1054 of the administrative

16   transcript, plaintiff's history recites that she enjoys bow

17   hunting and gun hunting on her land.  At page 656 there is an

18   indication that she fell out of a kayak.  As plaintiff's

19   counsel notes, it's unclear whether she was operating the

20   kayak herself.

21             Procedurally, plaintiff applied for Title II

22   benefits on September 27, 2016.  It was noted that a prior

23   claim for benefits from April 8, 2016 was denied.  Plaintiff

24   requested reopening of that case.  In her application, she

25   alleged an onset date of February 16, 2012, and at page 218,

1    alleged a host of conditions supporting her claim for

2    disability.  A hearing was conducted on September 17, 2019 by

3    Administrative Law Judge Shawn Bozarth to address plaintiff's

4    application.  ALJ Bozarth issued an unfavorable decision on

5    September 26, 2019.  That became a final determination of the

6    agency on August 20, 2020 when the Social Security

7    Administration Appeals Council denied plaintiff's request for

8    review.  This action was commenced on October 8, 2020 and is

9    timely.

10          In his decision, ALJ Bozarth applied the familiar

11   five-step sequential test for determining disability, first

12   noting that plaintiff was last insured on March 31, 2017, and

13   therefore the focus was on a closed period of February 16,

14   2012 to March 31, 2017.

15          At step one, it was noted that plaintiff has

16   engaged in some work activities, but that it did not rise to

17   a substantial gainful activity status.

18          At step two, ALJ Bozarth concluded that plaintiff

19   suffers from severe impairments that impose more than minimal

20   limitations on plaintiff's ability to perform basic work

21   activities, including asthma, degenerative joint disease of

22   the right shoulder, interstitial cystitis, bilateral hearing

23   loss, and osteoarthritis.

24          At step three, the ALJ concluded that plaintiff's

25   conditions do not meet or medically equal any of the listed

1    presumptively disabling conditions set forth in the

2    regulations, specifically considering Listings 1.02 and 3.03.

3              ALJ Bozarth next determined that notwithstanding

4    her conditions, plaintiff retains the residual functional

5    capacity, or RFC, to perform light work with various

6    exceptions, addressing, among other things and pertinent to

7    this challenge, the ability only to occasionally reach

8    laterally or overhead with the right upper extremity.  He

9    also included a provision addressing plaintiff's

10   environmental issues, stating that the claimant needs to

11   avoid concentrated exposure to respiratory irritants such as

12   chemicals, dusts, odors, fumes, and gases, extremes of

13   temperature and humidity, as well as poorly ventilated work

14   areas.  And lastly, again pertinent to this proceeding, it

15   was stated that the claimant can work jobs within close

16   proximity to bathroom facilities.

17             Applying that RFC, at step four, ALJ Bozarth

18   concluded that plaintiff is incapable of performing her past

19   relevant work due to the exertional requirements associated

20   with that work.

21             At step five, ALJ Bozarth initially noted that if

22   plaintiff could perform a full range of light work, a finding

23   of no disability would be directed by the Medical-Vocational

24   Guidelines set forth in the Commissioner's regulations, and

25   specifically Rule 202.14 of those guidelines.  Because of the

1    additional limitations set forth in the RFC, the testimony of

2    a vocational expert was elicited and based on that testimony,

3    ALJ Bozarth concluded that plaintiff is capable of performing

4    available work in the national economy, citing as

5    representative positions usher, furniture rental clerk, and

6    counter clerk, all of which fall in the light category with

7    an SVP of 2.  He therefore concluded that plaintiff was not

8    disabled at the relevant times.

9            The court's function, of course, in this case is

10   limited to determining whether correct legal principles were

11   applied and the result is supported by substantial evidence,

12   being defined as such relevant evidence as a reasonable mind

13   would find adequate to support a conclusion.

14           In support of her challenge, plaintiff raises four

15   basic contentions.  First, she argues that the weight given

16   to opinions authored by Kenneth Carter, the physical

17   therapist, Dr. Elke Lorensen, the consultative examiner, and

18   FNP Mara Morabito, a treating nurse practitioner, was

19   improper.

20           Secondly, she challenges the RFC finding as not

21   supported by substantial evidence, contending that there is

22   no medical opinion that supports the RFC.

23           Third, she argues that plaintiff's RFC does not

24   take into account all of the effects of her interstitial

25   cystitis, including considering the number of bathroom breaks

1    required and whether it would exceed 10 percent of being off

2    task, which would preclude gainful employment.

3              And fourth, she challenges the administrative law

4    judge's evaluation of her subjective complaints.

5              There are a couple of overarching principles which

6    need to be taken into consideration first.  It is plaintiff's

7    burden to show through step four the limitations that she

8    experiences based on her conditions, and that includes at the

9    RFC level.  The second is that we're dealing with a closed

10   period, again, February 16, 2012 to March 31, 2017.

11             Plaintiff's focus in this matter is basically upon

12   the use of the right extremity to reach and her incontinence

13   and the number of times she would be required to go to the

14   bathroom while working.

15             Addressing first the weight of medical opinions,

16   because of the date on which plaintiff's application was

17   filed, the former regulations control.  Under those

18   regulations, there are several factors which must be

19   considered or should be considered when determining the

20   weight to be assigned to a medical opinion, they're specified

21   in 20 C.F.R. Section 404.1527, and we sometimes in this

22   circuit refer to them as the *Burgess* factors.  The opinions

23   here -- and I guess the other thing that should be recalled

24   is that under the Second Circuit's decision in *Veino*, it is

25   for the ALJ in the first instance to weigh medical opinions,

1    and the court is not permitted to simply reweigh the opinions

2    as the court would see fit.

3            In this case, the first opinion at issue was given

4    by Physical Therapist Kenneth Carter on December 4, 2015.  It

5    appears at pages 329 to 331 of the administrative transcript.

6    In it, Mr. Carter recommends that plaintiff be limited to

7    sedentary work, with no shoulder reaching or overhead

8    reaching activities for the right upper extremity.  It is

9    recommended no forward or outward reaching past the zone of

10   proximity for right upper extremity.  In the summary at the

11   end, it is indicated that overhead reaching, overhead

12   lifting, shoulder lifting, and forward reaching values are

13   reflective of the left upper extremity which indicate

14   frequent in those areas, but right upper extremity lifting

15   maximum is one pound unilaterally within the zone of

16   proximity.

17           The administrative law judge analyzed that medical

18   opinion at page 17 and found that it was entitled to little

19   weight.  The two reasons cited is that Mr. Carter is not an

20   acceptable medical source, which clearly he is not; and

21   second, it was based on a snapshot examination that was not

22   able to consider claimant's longitudinal treatment course.  I

23   would say that I would hope for a little bit more

24   explanation, particularly as to how plaintiff's treatment

25   records are inconsistent with Mr. Carter's opinion, but I

1    think if you read the decision as a whole, it is, the

2    requirements are satisfied and I don't find any error in

3    considering Mr. Carter's opinions.

4            The second opinion given is from Nurse Practitioner

5    Morabito.  It was given on December 12, 2016 and amended in

6    areas that really don't affect the arguments now before the

7    court on June 11, 2019.  It appears at 1142 and 1143 of the

8    administrative transcript, and it basically states that

9    plaintiff should never reach above shoulder level.

10           The ALJ discussed Nurse Practitioner Morabito's

11   opinion at page 17 and gave it little weight and cited four

12   basic reasons:  One, not being an acceptable source which of

13   course is true; second, it is inconsistent with the

14   plaintiff's own reported activities of daily living,

15   including kayaking and bow hunting; third, does not provide a

16   detailed rationale, which is true; and fourth, the opinion as

17   to disability is reserved to the Commissioner.  Once again, I

18   think there was proper consideration of the nurse

19   practitioner's opinion, and while I agree with the plaintiff

20   that she probably has the most longitudinal knowledge of

21   plaintiff and plaintiff's shoulder treatment of the medical

22   opinions cited, nonetheless, the treatment of it as a whole

23   and reviewing the decision as a whole is proper.

24           The third of course is from Dr. Elke Lorensen who

25   conducted an examination of the plaintiff on November 4,

1    2016, which is during the relevant period.  It was contained

2    in the record in 569 through 572.  Significantly,

3    Dr. Lorensen found only moderate limitation for pushing,

4    pulling, and reaching with the right arm.  There, the

5    administrative law judge accorded it partial weight at page

6    17 although, as the Commissioner's counsel has argued, the

7    residual functional capacity is actually more restrictive in

8    several regards than Dr. Lorensen's opinion.  The reasons

9    cited are:  This opinion is based on a single examination;

10   the source was not able to consider more recent treatment

11   notes or impairments; and it's vague about specific

12   limitations and not entirely consistent with more recent

13   progress notes.  In my view it's a little unclear from

14   plaintiff's argument as to what portions of Dr. Lorensen's

15   opinion are inconsistent with the RFC.  Dr. Lorensen did note

16   some limitation on reaching and did note some objective

17   limitations on range of motion of above shoulder at page 517

18   based on her examination of the plaintiff.  The moderate

19   limitation, although I agree moderate is not always as

20   precise as one might hope, is accommodated in the residual

21   functional capacity and is consistent with the RFC.  *Kristen*

22   *F. v. Commissioner of Social Security*, 2021 WL 1668933, from

23   the Northern District of New York, April 27, 2001, and

24   *Gilmore v. Commissioner of Social Security*, 2016 WL 4079535,

25   from the Northern District of New York, July 29, 2016.

1          In conclusion, I don't find any error in the weight

2     given to the medical opinions in the record.

3          The next focus is upon the residual functional

4     capacity finding.  An RFC represents a finding of the range

5     of tasks a plaintiff is capable of performing notwithstanding

6     his or her impairments.  It is informed by consideration over

7     claimant's physical activities -- abilities, mental

8     abilities, symptomology, including pain and other limitations

9     that could interfere with work activities on a regular and

10    continuing basis.  The RFC in this case takes into

11    consideration plaintiff's shoulder and interstitial cystitis.

12          When it comes to the interstitial cystitis, the

13    issue's governed by SSR 15-1 which notes that in assessing an

14    RFC relative to this condition, we must consider all of the

15    person's impairments-related symptoms in deciding how much

16    the symptoms may affect functional capacity.  Urinary

17    frequency can necessitate trips to the bathroom as often as

18    every 10 to 15 minutes day and night.  Consequently, some

19    individuals with IC essentially may confine themselves to

20    their homes.  In this case, the issue, the condition IC was

21    accommodated by the need for close proximity to the bathroom.

22    The plaintiff in my view failed to establish how, during the

23    relevant time period, her IC would preclude her from being

24    able to work and being off task more than 10 percent of the

25    day.  The administrative law judge noted that recent

1   treatment records during the relevant period showed that

2   incontinence was not an issue, that's at page 16.  At page

3   1102, Dr. Omarbasha noted that plaintiff was no longer

4   incontinent although he did acknowledge that the issue could

5   recur.  At page 422, it was also noted, this is from

6   February 25, 2016, that following up on her surgery and the

7   placement of suburethral sling, plaintiff claimed that she

8   was 100 percent continent and was happy with the outcome of

9   her surgery.

10          So although I acknowledge that if there were

11  evidence plaintiff had carried her burden of establishing

12  that her IC is an ongoing problem and she had ongoing

13  incontinence of a severe nature, it would be incumbent on the

14  ALJ to analyze not only close proximity to a bathroom but

15  frequency of bathroom use, it was not necessary in this case

16  because plaintiff did not carry her burden.

17          I believe that the residual functional capacity,

18  for the reasons cited earlier, accommodated her shoulder

19  issue, as well as her asthma and her incontinence.  It is

20  true that, as the plaintiff has argued, there is no one

21  medical opinion that perfectly corresponds with the RFC, but

22  that is not necessary, so long as there is substantial

23  evidence on which the RFC can be formulated.  *Tankisi v.*

24  *Commissioner of Social Security*, 521 F.App'x 29, Second

25  Circuit 2013.  As I know the judge of this court has noted in

1   *House v. Astrue*, 11-CV-915, 2013 WL 422058 from February 1,

2   2013, if there is sufficient evidence in the record and the

3   administrative law judge is not playing doctor and

4   interpreting raw medical data, a common sense residual

5   functional capacity can be formulated.  In this case, that

6   was done and it draws considerable support not only from

7   Dr. Lorensen's opinion but from the medical treatment records

8   in issue.  So I don't find any basis to conclude that the

9   residual functional capacity was not supported by substantial

10  evidence.

11          The last issue of course is the weighing of

12  plaintiff's claims of symptomology.  The administrative law

13  judge applied the two-step analysis that is specified under

14  the regulations and Social Security Ruling 16-3p.  He did

15  that at pages 15 to 18 and first noted plaintiff's complaints

16  or claims at page 14, and then went through carefully the

17  records associated with plaintiff's treatment of her shoulder

18  and IC conditions.  He explained his finding at page 16,

19  summarized the reasons for his RFC finding, and concluded

20  that greater limitations were not supported by the evidence.

21  As the Commissioner argues, the ALJ's analysis of subjective

22  complaints is entitled to considerable deference, and I'm not

23  able to conclude in this case that there's any basis to

24  disturb it.  I don't find that no reasonable fact finder

25  could conclude as the administrative law judge did, which of

1   course under such cases as *Brault* is the standard that I

2   apply.

3          So for those reasons, I conclude the correct legal

4   principles were applied and the result is supported by

5   substantial evidence.  I will grant judgment on the pleadings

6   to the defendant and order dismissal of plaintiff's

7   complaint.

8          Thank you both, I hope you stay safe in these

9   interesting and challenging times.

10          MS. SLIMBAUGH:  Thank you, your Honor.

11          MS. CARTER:  Thank you, your Honor.

12              (Proceedings Adjourned, 10:47 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4          I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

5    Official Realtime Court Reporter, in and for the

6    United States District Court for the Northern

7    District of New York, DO HEREBY CERTIFY that

8    pursuant to Section 753, Title 28, United States

9    Code, that the foregoing is a true and correct

10   transcript of the stenographically reported

11   proceedings held in the above-entitled matter and

12   that the transcript page format is in conformance

13   with the regulations of the Judicial Conference of

14   the United States.

15

16                      Dated this 19th day of January, 2022.

17

18

19                      /S/ JODI L. HIBBARD
                        _____
20                      JODI L. HIBBARD, RPR, CRR, CSR
                        Official U.S. Court Reporter
21

22

23

24

25
```

JODI L. HIBBARD, RPR, CRR, CSR
(315) 234-8547